**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.

T.S., a minor, by and through his parent, Aimee Skul

      Plaintiff,

v.

Boulder Valley School District

      Defendant.

---

## COMPLAINT WITH JURY DEMAND

---

Plaintiff, T.S., a minor, by and through his parent, Aimee Skul, through counsel Kishinevsky & Raykin, submits the following Complaint against Boulder Valley School District ("District" or "Defendant"). This action seeks declaratory and injunctive relief and appropriate damages and costs.

### I.      PARTIES, JURISDICTION, AND VENUE

1. Plaintiff, T.S., is a child enrolled in Boulder Valley School District.

2. T.S. is a resident of Jefferson County, Colorado.

3. T.S. resides with his mother, Aimee Skul.

4. Defendant, Boulder Valley School District (the "District"), is a school district organized under the laws of the State of Colorado, C.R.S. §22-30-101 *et seq*.

5. The District has its principal place of business in Boulder County, Colorado.

6. This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1331.

1

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), as the wrongful acts alleged occurred in whole or in part in Colorado.

## II.    GENERAL ALLEGATIONS

8. T.S. is a senior in high school.

9. T.S. has been enrolled at Monarch High School ("Monarch"), a public high school in the District, since his freshman year of high school.

10. T.S. attended Monarch for his freshman, sophomore, and junior years of high school.

11. T.S. played hockey on Monarch's junior varsity team for his freshman and sophomore years, and on Monarch's varsity team for his junior year.

12. T.S. was supposed to attend Monarch for his senior year, the 2025-2026 school year.

13. However, on July 31, 2025, the District, through its Director of Student Support Services, Sennen Knauer, informed Ms. Skul that T.S. would not be permitted to attend Monarch nor participate in any District events, activities, or athletics while a petition before juvenile court was pending (the "Decision").

14. The petition pending in juvenile court is for an offense that would constitute unlawful sexual behavior, as defined in C.R.S. § 16-22-102(9).

15. T.S. has not been convicted of any crime. His trial is set for February 18-20, 2026.

16. In the Decision, the District alleged that based on the information available and pursuant to C.R.S. § 22-33-105(5)(a), it determined that the allegations involved behavior that is detrimental to the safety, welfare, and morals of other students or of school personnel.

17. The District additionally alleged that educating T.S. in the school may disrupt the learning environment in the school, provide a negative example for other students, or create a dangerous and unsafe environment for students, teachers, and other school personnel.

18. The petition pending in juvenile court concerns an alleged event that took place off District grounds.

19. In the Decision, the District informed Ms. Skul that T.S. could complete his schooling through the District's online school, Boulder Universal ("BU") while the petition was pending.

20. The Decision does not provide the names and titles of the District officials that made this determination.

21. The Decision does not contain any information on how to appeal the decision.

22. The Decision directly contradicted a phone call that a Jefferson County Juvenile Court employee had with a Monarch employee on July 30, 2025.

23. The Monarch employee informed the Jefferson County Juvenile Court employee that T.S. could attend Monarch in-person and participate in events, activities, and athletics for the 2025-2026 school year.

24. The Monarch employee stated that Monarch was not concerned that T.S. would pose a safety risk based on T.S.'s three years at Monarch.

25. T.S. is a model student. Prior to this Decision, T.S. has never received any disciplinary infractions during his time in the District.

26. Sarah Gatewood, the Jefferson County community safety officer assigned to T.S., informed Ms. Skul that T.S. would be permitted to attend Monarch for the 2025-2026 school year that same day.

27. On August 1, 2025, Ms. Skul spoke with Ms. Knauer by telephone. Ms. Skul requested that the District reverse its Decision and requested information on how to appeal the District's Decision.

28. Ms. Knauer informed Ms. Skul that it was the District's policy to always place students on an alternative education program whenever a petition was filed in juvenile court alleging offenses of unlawful sexual behavior or a crime of violence.

29. Ms. Knauer informed Ms. Skul that it was the District's policy that such a decision was not disciplinary in nature, and therefore, T.S. was not entitled to a hearing or an appeal.

30. On December 3, 2025, Ms. Skul emailed Ms. Knauer, informing Ms. Knauer that she was concerned that T.S. was not given an opportunity to have a hearing prior to the District's Decision.

31. Ms. Skul stated that the goal was for T.S. to be permitted to play hockey for his senior year season.

32. T.S.'s hockey coach, Jimmy Dexter, informed Ms. Skul that he would allow T.S. to play on Monarch's varsity team for the 2025-2026 season if permitted by the District.

33. Mr. Dexter is employed by the District.

34.  On December 5, 2025, Ms. Knauer again reiterated that T.S. is not entitled to a hearing.

35. Ms. Knauer did not address Ms. Skul's request that T.S. be permitted to play on Monarch's hockey team.

36. On December 8, 2025, Ms. Skul informed Ms. Knauer that T.S. was scheduled for trial in February. Ms. Skul again requested that T.S. be afforded a hearing as he is being denied access to Monarch.

37. Ms. Knauer responded, stating that T.S. was not being denied admission to the District nor his education, as he is enrolled through BU.

38. On December 9, 2025, Ms. Skul responded to Ms. Knauer, stating that T.S. is being denied access to Monarch and its events, activities, and athletics. Ms. Skul reiterated that T.S. was entitled to a hearing before this decision was made.

39. On December 10, 2025, Ms. Knauer stated that the Decision was not disciplinary in nature and was made by a District-level group for safety reasons.

40. Ms. Knauer did not provide the names or titles of the District-level group members.

41. On December 12, 2025, Ms. Skul again stated that T.S. was entitled to a hearing before an impartial District representative following the Decision. Ms. Skul requested that Ms. Knauer provide the name and contact information of the District staff member properly qualified to conduct this hearing.

42. On December 15, 2025, Ms. Knauer told Ms. Skul that a student was only entitled to a hearing for expulsion or admission matters.

43. However, T.S.'s exclusion from Monarch and its events, activities, and athletics is disciplinary in nature and amounts to a *de facto* expulsion.

44. T.S. has been excluded from Monarch and its events, activities, and athletics from August 2025 to the present.

45. BU does not afford T.S. with the same programs, services, or opportunities as Monarch.

46. BU does not provide T.S. with the opportunity to get any in-person instruction or assistance from teachers.

47. T.S. struggles with completing academic work completely online.

48. Further, BU does not permit students to receive credit for work turned in late, whereas Monarch permits students to receive credit for work turned in late.

49. As a result, T.S. has struggled academically.

50. T.S. is not able to socialize with peers in person, an important part of public education.

51. T.S. is not able to engage in collaborative classwork while enrolled at BU.

52. T.S. is not able to participate in school community events nor celebrate senior milestones with his peers.

53. Being excluded from Monarch has taken an immense toll on T.S.'s emotional wellbeing. He feels isolated and excluded.

54. T.S. was denied enrollment at Monarch without an opportunity to be heard.

55. T.S. was then denied any opportunity for appealing the District's Decision.

56. The regular season for Colorado high school ice hockey is November through March.

57. T.S. has already missed over half of the season.

58. T.S. has been approached by recruiters for junior hockey programs. Participation in a junior hockey program is crucial for players trying to be recruited for National Collegiate Athletic Association Division I teams or National Hockey League teams.

59. Recruiters focus heavily on a student's senior year performance.

60. T.S.'s exclusion from Monarch's hockey program for his senior year is impeding his ability to be recruited for a junior program.

6

### III.    LEGAL CLAIMS

### CLAIM I
### 42 U.S.C. § 1983 – *Monell Claim*
### Denial of Procedural Due Process, in violation of the Fourteenth Amendment

61. Plaintiff incorporates the allegations set forth above as if fully set forth herein.

62. In pertinent part, 42 U.S.C. § 1983 provides:

Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . .

63. Children in Colorado have a right to attend public school. Colo. Const. Art. IX, § 2.

64. Thus, T.S. has a "legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by that Clause." *Goss v. Lopez*, 419 U.S. 565, 574 (1975).

65. Students do not "shed their constitutional rights . . . at the schoolhouse gate." *Tinker v. Des Moines Indep. Comm. Sch. Dist.*, 393 U.S. 503, 506 (1969).

66. Defendant has deprived T.S. of due process, in violation of the Fourteenth Amendment.

67. In *Goss*, the Supreme Court clearly established that, for due process to be afforded, students facing a suspension of ten days or less were entitled to "oral or written notice of the charges against him and if, he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." 419 U.S. at 581.

68. The Supreme Court also noted that "longer suspensions or expulsions from the remainder of the school term, or permanently, may require more formal procedures." *Id.* at 584.

69. Defendant did not provide T.S. with notice, an explanation of the evidence that the District had, or an opportunity to be heard before issuing its Decision.

70. Defendant's Decision is a *de facto* expulsion. T.S. is not permitted to attend Monarch nor participate in any of its events, activities, or athletics for an indeterminate amount of time.

71. Defendant's *de facto* expulsion of T.S. could last for the entirety of the 2025-2026 school year.

72. Defendant did not provide T.S. with an opportunity to appeal the Decision.

73. It is Defendant's policy, custom, and/or practice to always place students on an alternative education program whenever a petition is filed in juvenile court alleging offenses of unlawful sexual behavior or a crime of violence.

74. It is Defendant's policy, custom, and/or practice to deny such students a hearing or opportunity to appeal the decision.

75. Defendant's policies, customs, and/or practices deprived T.S. of due process.

76. Defendant's policies, customs, and/or practices were the causal force and proximate cause of the violation of Plaintiff's constitutional rights.

77. Defendant's application of C.R.S. § 22-33-105(5)(a) as applied to T.S. violates the Due Process Clause.

78. The acts or omissions of Defendant as described herein deprived Plaintiff of the rights, privileges, liberties, and immunities secured by the Constitution of the United States of America and the Colorado Constitution.

79. As a results of Defendant's acts or omissions, Plaintiff suffered damages, including but not limited to emotional distress.

**CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF**

80. Plaintiff incorporates the allegations set forth above as if fully set forth herein.

81. Pursuant to Fed. R. Civ. P.57 and 28 U.S.C. § 2201, Plaintiff requests that the Court declare the rights and legal relations of the parties.

82. Plaintiff seeks a declaratory judgment that:

   a. Defendant's actions excluding Plaintiff from Monarch High School and its events, activities, and athletics violated Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment.

   b. C.R.S. §§ 22-33-105(5)(a)-(c) violates the Due Process Clause of the Fourteenth Amendment as applied.

83. Plaintiff further seeks preliminary and permanent injunctive relief.

84. Plaintiff seeks an injunction: requiring Defendant to permit T.S. to attend Monarch High School and participate in all events, activities, and athletics for the remainder of the 2025-2026 school year.

## IV.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

   A. Find that Defendant violated federal law;

   B. Find Plaintiff is the prevailing party;

   C. Award Plaintiff nominal damages for violation of his constitutional rights;

   D. Award Plaintiff compensatory damages, including for emotional upset, stress, and anxiety in an amount to be established at trial;

   E. Award Plaintiff costs and attorney fees;

9

F.  Preliminarily and permanently enjoin Defendant as described above;

G.  Award declaratory relief as described above; and

H.  Any other relief deemed necessary or appropriate.

DATED: January 16, 2026

**PLAINTIFF REQUESTS A JURY ON ALL ISSUES SO TRIABLE**

<u>/s/Igor Raykin</u>
Igor Raykin
Kishinevsky & Raykin, LLC
2851 South Parker Road, Suite 150
Aurora, CO 80014
Tel: 720-767-1846
Fax: 720-748-8894
igor@coloradolawteam.com

<u>/s/Kaity Tuohy</u>
Kaity Tuohy
Kishinevsky & Raykin, LLC
2851 South Parker Road, Suite 150
Aurora, CO 80014
Tel: 720-767-1846
Fax: 720-748-8894
kaity@coloradolawteam.com

*Attorneys for the Plaintiff*

10